**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DEWEY PORTLAND CEMENT COMPANY, DIVISION OF MARTIN MARIETTA CORPORATION, Respondent.**

**No. 7620.**

United States Court of Appeals
Tenth Circuit.

Sept. 2, 1964.

Paula Omansky, Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Warren M. Davison, Washington, D. C., on the brief), for petitioner.

Robert E. Ackerberg, Chicago, Ill. (Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., of counsel, on the brief), for respondent.

Before PICKETT, LEWIS and HILL, Circuit Judges.

LEWIS, Circuit Judge.

The National Labor Relations Board seeks enforcement of an order issued June 5, 1963, the substance of which would require respondent to bargain collectively with United Cement, Lime and Gypsum Workers International Union, AFL–CIO, as the exclusive bargaining representative of the company's production and maintenance employees. Respondent admits its refusal to bargain but denies the commission of an unfair labor practice under section 8(a) (5) and (1) of the National Labor Relations Act,. 29 U.S.C. § 151 et seq., through assertion that the Board did not validly determine and certify an appropriate bargaining unit.

The specific issue is whether the Board properly included in its determination of an appropriate unit under section 9(b) of the Act twelve "disputed" employees claimed by respondent to be technicians and wrongfully included in a bargaining unit of operational and maintenance labor. The decision of the Board is resisted both upon the merits and upon procedural and constitutional grounds.

The Dewey Portland Cement Company is a manufacturer of portland cement. and has a plant at Tulsa, Oklahoma. Operations at this plant, which began early in 1961, initiated in the industry a centrally controlled system of automation devised to provide continuous automatic control of all production and machinery operations covering the crushing, processing, grinding, and milling of raw materials and excluding only the original quarrying and final shipping. The disputed employees are designated as four laboratory technicians, one physical analyst, one chemical analyst, one instrumentation technician, one staff utility man and four console room technicians. All of these employees work within the company's Console-Laboratory Building.

During April, 1961, the Union filed with the Board a petition for election. Subsequent to a hearing, the Board issued on November 1, 1961, its decision and direction of election, finding that the disputed employees were technical employees and not properly within the unit. After motion by the Union the Board on December 8, 1961, ordered the case remanded to the Regional Director for reconsideration in view of the recent

Board decision in The Sheffield Corp.,[1] 134 N.L.R.B. 1101, and for the purpose of adducing additional evidence with respect to the job categories in dispute. Further hearings were held on January 24, and February 7 and 8, 1962, resulting in a Supplemental Decision and Direction of Election issued by the Board on June 27, 1962, that vacated the earlier decision and placed the disputed employees in the collective bargaining unit. The Board found that, of the disputed employees, only the chemical analyst and the console room technicians were technical employees, and the Board included them in the collective bargaining unit because, under the criteria of the Sheffield decision, their interests were found to be "closely allied with those of the production and maintenance employees." An election was held on July 7, 1962, and the Union was certified on September 9, 1962, with all of respondent's objections being overruled by the Board.

Section 9(b) gives the Board wide discretion in determining an appropriate bargaining unit and its considered decision in such regard will not be set aside by this court absent an arbitrary or capricious foundation. Packard Motor Car Co. v. NLRB, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040; NLRB v. Stanolind Oil & Gas Co., 10 Cir., 208 F. 2d 239; Mountain States Tel. & Tel. Co. v. NLRB, 10 Cir., 310 F.2d 478. From our review of the evidence adduced at the unit hearings we cannot say that the Board's determination that the disputed employees should be included in the bargaining unit was either arbitrary or capricious and to the contrary we find considerable support for the inferences drawn by the Board from the undisputed facts concerning these employees' duties. Automation must necessarily bring to

industry a new concept of operational and maintenance functions when, as here, the complete manufacture and quality control of a product is directed and mastered by such innovations as closed circuit television and remote electronic push button operational control. So, too, automation may bring to the technician and operational employee a much closer relationship and community of interest. In the case at bar both General Counsel for the Board and counsel for respondent have, in turn, carefully analyzed the duties of the disputed employees and compared and contrasted such duties with those employees of the company performing admittedly maintenance work and with those employees who are admittedly properly classified as supervisors. To detail the evidence would but show that the positions of both parties have undoubted merit, and the case therefore falls within the classic scope of the Board's expertise, that is, to consider all the circumstances and choose which of two reasonable solutions will best serve the purposes of the Labor Relations Act. The Board, having exercised its discretion in such regard, acted within its authority and its considered decision will not be disturbed on review. We find adequate record support in the unit hearings both for the Board's classification of employees as to non-technicals and as to technicals, and for the inclusion of the latter in the bargaining unit. However, respondent strenuously contends that the Board denied respondent due process at the subsequent unfair labor practice hearing.

At the unfair labor practice hearing on February 3, 1963, respondent offered to prove that due to new matters and changed circumstances arising subsequent to the February, 1962, hearing

---

1. In this case the Board overruled its prior or practice of automatically excluding all technical employees from production and maintenance units, setting forth certain additional criteria upon which a case by case determination would be based, viz., desires of the parties, history of bargaining, similarity of skills and job functions, common supervision, contact and/or exchange with other employees, similarity of working conditions, type of industry, organization of plant, whether the technical employees work in separately situated and separately controlled areas, and whether any union seeks to represent technical employees separately.

the Board's 1962 decision should not be followed. The offer of proof included, *inter alia,* evidence that the disputed employees had voted informally to reject the Union, evidence that there had been no interchange of disputed employees with production employees for more than one year, and evidence that the interests of the disputed employees were closely allied with those of professional and supervisory employees, with one another, and not with production and maintenance employees. While the Board rejected respondent's offer of proof as "a continuation of the same matters previously litigated," it stands as admitted for purposes of judicial review. NLRB v. Ideal Laundry & Dry Cleaning Co., 10 Cir., 330 F.2d 712, 716. In denying respondent's offer, the Board stated that "examination of the proferred testimony shows it is a continuation of the same matters previously litigated and that it reveals no substantial change that would affect the unit determination." Since section 5(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1004(b), states that the agency shall afford interested parties opportunity for the submission of evidence, the Board cannot exclude from consideration facts and circumstances relevant to its inquiry which may be persuasive in the exercise of its discretion, although it may require the respondent to show that the evidence is pertinent and not merely cumulative. Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251. In NLRB v. Ideal Laundry & Dry Cleaning Co., 10 Cir., 330 F.2d 712, 716, this court stated that "due process demands that either party be permitted to produce additional proof deemed material to the vital issue of appropriateness, if it was not a part of the record in the representation proceedings, and for some reason was unavailable for consideration by the Board in its decision therein."

■■■ But the rule is self-limiting and does not recognize a right to litigate the issue of the appropriate bargaining unit de novo. Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 61 S.Ct.

908, 85 L.Ed. 1251. Due process is denied in a representation hearing by the rejection of pertinent evidence upon the issue and when so rejected the employer can present such evidence in the unfair labor practice hearing as a defense to the charge of violation. NLRB v. Ideal Laundry & Dry Cleaning Co., 10 Cir., 330 F.2d 712. The desire of the employees to be included or excluded in a bargaining unit is an important, but not controlling, determinative factor under the rule of Ideal Laundry, supra.

■■■ In considering the application of these rules to the tender of proof made by respondent at the unfair practice hearing, we do not think that respondent was denied due process but that the Board, again, acted within the proper limits of its discretion. The expression of the employees' desires, unlike the situation in Ideal, was not rejected at the representation hearing. At such time the disputed employees had not expressed their wishes and did so only after the election had been held with their votes being counted, the Union had been certified, and the company had indicated a willingness to bargain and a bargaining date had been set. In fact, the expressed desire of the employees to reject the Union was made known to management only after the disputed employees had made an inquiry concerning independent bargaining. Under these circumstances the Board could well hold that the desire of the employees, though a pertinent factor, was not a new factor that would change the outcome of its decision.

That portion of respondent's offer of proof affecting the issue of whether the alliance between the disputed employees should be tied to the maintenance employees or to the professional and supervisory employees was, as the Board stated, a continuation of the original issue. While we feel that the Board could well have given further consideration to the issue in view of the infancy of the plant at the time of the representation hearing and the subsequent crystallization of the employment routine, with at

least an important change in the policy of interchange between the disputed employees and the maintenance employees, it remained for the Board to weigh the importance of stability and finality in the bargaining process against the circumstances of this particular case. Having determined that the proferred evidence was not such as would affect the unit designation the Board had no absolute duty to make that designation anew.

The order of the Board will be enforced.