**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MORAN OIL PRODUCING AND DRILLING CORPORATION, Respondent.**

No. 686–69.

United States Court of Appeals, Tenth Circuit.

Sept. 30, 1970.

Rehearing Denied in No. 686–68 Nov. 18, 1970.

Paul Spielberg, Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Lawrence H. Pelofsky, Atty., N.L.R.B., on the brief), for petitioner.

Joseph Connally, Odessa, Tex. (Turpin, Smith, Dyer, Hardie & Harman, Odessa, Tex., on the brief), for respondent.

Before JONES *, BREITENSTEIN and HOLLOWAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The National Labor Relations Board petitions for the enforcement of an order entered upon a finding that respondent Moran Oil Producing and Drilling Corporation had violated § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5) and (1), by refusing to bargain with the duly certified representative of its employees. The Company admits the refusal to bargain and attacks the certification.

The Company drills oil wells for major oil producers. It is located in Hobbs, New Mexico, and operates in the area known as the Permian Basin with five drilling rigs, four of which are in operation at any given time. On each rig there is a four-man crew comprised of one driller, who is a supervisory employee, and three roughnecks. Because drilling is a continuous operation, the Company runs three shifts and for each rig there is a daily complement of three drillers and nine roughnecks. Drilling jobs average 26 days each. In spite of the Company's efforts to retain experienced personnel by transferring drilling crews from one job to another, there is a high turnover of workers. In the 15

* Of the Fifth Circuit, sitting by designation.

months before the representation hearing, 255 men were required to fill approximately 36 roughneck slots. Of this number 17 were substantially full-time employees; 56 worked on two or more separate occasions; and the remaining 186 worked on one occasion and did not seek or accept employment with the Company thereafter.

Upon the petition of Local 826, International Union of Operating Engineers, AFL–CIO, for certification as collective bargaining agent, the Regional Director held a representation hearing. He found that the Company's operations and employment experiences fell within the concept of instability of employment common to the oil industry in the Permian Basin. In determining voter eligibility, he applied what is referred to as the Hondo formula. Under it, employees eligible to vote are those (1) who had been employed by the Company at least 10 working days during the 90 calendar days preceding the direction of election unless they had subsequently been discharged or had quit the job, and (2) those whose names appeared on the Company's payroll immediately before the notice of election. The Company did not seek Board review of the Director's decision as is permitted by the Regulations. See 29 CFR § 102.67(b).

After the election went in favor of the Union, the Company filed timely objections and an administrative investigation was made. The Director sustained some challenges to votes cast and denied others. The Board denied the Company's request for review of the Director's rulings on the challenged ballots. The revised tally showed 23 votes for and 21 against Union representation. Subsequently, the Board denied the Company's petition for review on the ground that it raised no substantial issues and certified the Union as the bargaining representative.

The Company refused to recognize and bargain with the Union which filed charges for a violation of § 8(a) (5) and (1). The Company's answer renewed its objections to the representation proceedings. The General Counsel moved for a summary judgment on the ground that the issues raised had been decided in the representation proceedings. In opposition the Company contended that a hearing was required on certain of its contentions. The Examiner granted the motion for summary judgment and his decision was upheld by the Board which entered the conventional order requiring bargaining and posting of notices. See 174 NLRB No. 26.

■ The Company argues that summary disposition was improper because, in the unfair labor practice proceedings, it was entitled to an evidentiary hearing on the correctness of the Director's representation determinations. The same contention has been presented to us in the cases of Meyer Dairy, Inc. v. National Labor Relations Board, 10 Cir., 429 F.2d 697, National Labor Relations Board v. Gold Spot Dairy, Inc., 10 Cir., 432 F.2d 125, and National Labor Relations Board v. Jackson Farmers, Inc., 10 Cir., 432 F.2d 1042. We have held that under § 3(b) the Board can delegate its unit determination functions to the regional director; that the decisions of the latter, if not set aside by the Board, are entitled to the same weight as Board determination; and that the limited review provided by 29 CFR § 102.67 applied to Board review of any delegated action of a regional director. The Company does not claim that it has any newly discovered or previously unavailable evidence or that it was foreclosed from presenting any substantial and material evidence at the representation proceedings. Under the authorities cited, the matter was ripe for determination on the motion for summary judgment.

■ The main thrust of the Company's argument is against the use of the Hondo formula. It was developed because of the instability of employment in the Permian Basin oil well drilling operations and has recently been approved by the Fifth Circuit in National Labor Relations Board v. Hondo Drilling Company, 5 Cir., 428 F.2d 943, and National Labor Relations Board v. Rod-

Ric Corporation, 5 Cir., 428 F.2d 948. In Hondo, the court said that "the eligibility formula appears reasonably calculated to enfranchise those roughnecks with a legitimate interest in the terms and condition of employment in the bargaining unit." We agree.

The Company argues against the application of the Hondo formula in this case because of the stability of its operations. It points out that its five rigs "averaged 77.21% occupancy throughout the year, or in other words that such rigs averaged operating 282 days per year," and contends that the Director and the Board confused stable employment opportunity with unstable employees. The application of this formula to the Company enfranchised 45 employees in addition to 17 full-time workers. We are convinced that this formula takes into account the workers who have a history of substantial employment and a reasonable expectancy of future employment and excludes those who have no recent employment and little or no likelihood of re-employment by the Company. The use of the formula accords with the rule that right to vote in a representation election depends on whether an employee is "sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a bargaining agent." National Labor Relations Board v. George Groh and Sons, 10 Cir., 329 F.2d 265, 268.

■ The Company argues further that the Hondo formula is a special eligibility rule for application to drilling companies throughout the Permian Basin and was promulgated without regard to the rule-making requirements of the Administrative Procedure Act, 5 U.S.C. § 553. We believe that in announcing the Hondo formula the Board was engaged in adjudication and not in rule-making. The Board developed an eligibility formula adapted to the specific facts in the Hondo case and applied it to the election therein. In the case at bar the Board has used the same formula.

In our opinion there is no significant difference between the facts in Hondo and those appearing here. We agree with the Fifth Circuit that "in fashioning the Hondo eligibility formula, in the course of the Hondo representation proceedings, the Board did not engage in rule-making within the meaning of the Administrative Procedure Act." See National Labor Relations Board v. Hondo Drilling Company, supra. We conclude that the use of the formula on the facts presented was well within the wide discretion of the Board to determine an appropriate bargaining unit and the eligibility of those entitled to vote at a representation election. The actions of the Board were neither capricious nor arbitrary and must be sustained. National Labor Relations Board v. Jackson Farmers, Inc., 10 Cir., 432 F.2d 1042.

The Company also argues that the election should be set aside because of the Union's failure to furnish names and addresses of eligible voters. In his Direction of Election the Director said that because of "the nature of the employment in this industry" the Company and the Union "should cooperate to the fullest extent possible" in the compilation of an eligibility list. Additionally, the Company was ordered to file with the Director the so-called Excelsior list of names and addresses of eligible voters. See Excelsior Underwear, Inc., 156 N.L.R.B. 1236. After the Company had complied, the Director requested that the Union furnish any addresses in its possession which differed from the Company list. The Union reported to the Director's office that it had no such addresses. Through inadvertence the Regional Office did not inform the Company of the report. The Company now contends that the Union's failure to supply addresses deprived it of an opportunity to communicate with a number of persons who were allowed to vote under the Hondo formula and for whom the Company did not have a current address. There is no showing that in fact the Union had addresses which it failed to disclose.

■ Under Excelsior, the Union was under no obligation to furnish the list unless the Board so ordered specifically. Under the directive for the election in this case the Union was required only to "cooperate" in compiling the eligibility list. Hence, the Excelsior principle does not apply. See National Labor Relations Board v. Hondo Drilling Company, supra, and National Labor Relations Board v. Rod-Ric Corporation, supra. We are satisfied that the Union complied with the directive and that the Company has no ground for complaint.

The order of the Board will be enforced.