NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TONKAWA REFINING COMPANY,
Respondent.

No. 707–70.

United States Court of Appeals,
Tenth Circuit.

Dec. 20, 1971.

Howard Hay, Atty. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Abigail Cooley Baskir, Atty., on the brief), N. L. R. B., for petitioner.

John Cosmic, Amarillo, Tex., for respondent.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This is an enforcement proceeding wherein the National Labor Relations Board seeks to enforce its order against Tonkawa Refining Company, based on the finding of violation of § 8(a) (1) of the National Labor Relations Act.

After a hearing and findings by a trial examiner, and review by the Board, the following findings appear from the record. As a result of injuries received in an explosion and fire at the company loading dock at Arnett, Oklahoma, one of Tonkawa's truck drivers died on Saturday, January 25, 1969. Following that incident, the remaining eleven truck drivers met and mutually agreed to ask the company for higher wages and other benefits. After the driver's funeral on the following Monday, a meeting was arranged between the drivers and two company representatives from Houston for the next day. Later that same day, Mr. Pollard, the plant manager, called for a meeting of the drivers on the evening of that same day. The meeting was held, and no solution was reached.

The drivers did not report for work the following morning in accordance with the work schedule, but did go to the plant during the morning and after Pollard had arrived at the plant. The drivers were advised that no meeting was forthcoming that day; the drivers then set forth their grievances and proposals concerning wages and benefits, and requested a response by the following day. They were advised by Pollard that this was insufficient time, and the drivers thereupon agreed to wait a full week for the response. The drivers offered at this point to go back to work, but Pollard rejected their offer and indicated that they were temporarily laid off.

Another meeting was arranged for that Tuesday evening, and all of the drivers attended. Pollard, his assistant, and Mr. Cosmic, counsel representing the company, attended the meeting on behalf of the company. The drivers testified that they were advised that the company would consider that they had quit if they did not report for work the following morning; the drivers' spokesman replied that they had not quit, and that they would return to work and remain until they received the company's response the following Tuesday. At this point the drivers refused to say what they would do after the following Tuesday if no response was received from the company. The meeting concluded and the drivers again stated that they had not quit. When the drivers did not report for work the next morning, Pollard instructed his secretary to compute the drivers' pay checks.

Thereafter and within a few days, three of the drivers were rehired, but without their prior seniority and vacation rights. The other eight drivers, by written request, asked all of the eleven drivers be put back to work unconditionally, and the request was refused. Those drivers then obtained application for employment as new employees, without prior rights, but none was ever rehired.

The trial examiner found that the drivers' refusal to report for work was concerted activity protected by § 7 of

the Act, and that the drivers were placed on temporary layoff because of this activity, were advised that they would be considered to have quit if they continued this activity, and were eventually discharged because of this activity, all in violation of § 8(a) (1). The Board reviewed the record and adopted the findings and conclusions of the trial examiner. The Board's order required Tonkawa to cease and desist from this and any other activity which interferes with and restrains its employees in the exercise of their rights, to reinstate all eleven drivers with back pay and interest thereon, with full seniority and vacation rights.

The respondent here urges the Board's order should not be enforced because of certain alleged procedural errors in the hearing before the trial examiner, and argues that substantial evidence does not support the Board's findings.

■■ The law is well settled that an employer violates § 8(a) (1) of the Act when he discharges an employee for engaging in concerted activity protected by § 7 of the Act. N.L.R.B. v. Burnup & Sims, 379 U.S. 21, 85 S.Ct. 171, 13 L. Ed.2d 1 (1964); N.L.R.B. v. Leprino Cheese Co., 424 F.2d 184 (10th Cir. 1970). Under § 7 a work stoppage by employees for the purpose of protesting wages and working conditions constitutes concerted activity for mutual aid and protection. N.L.R.B. v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962); N.L.R.B. v. Leprino Cheese Co., supra. One exception to this above stated general rule is where the work stoppages are partial, intermittent or recurrent. Valley City Furniture Co., 110 N.L.R.B. 1589 (1954), enf'd sub nom. N.L.R.B. v. Valley City Furniture Co., 230 F.2d 947 (6th Cir. 1956). Respondents seek refuge under this exception, which position we reject. The trial examiner found "[t]here is no factual basis in this case to support a contention . . . that the drivers were engaging in 'intermittent' or 'recurrent' or 'partial' strike action." The record amply supports this finding.

■ The respondent also urges lack of substantial evidence to support the following other findings of the Board: that the employees were placed on temporary layoff because of their protected activities; that the employer considered its employees as having quit if they persisted in their concerted activities; and that the employees were discharged because of the protected activities.

In regard to these contentions, we must keep in mind our limited scope of review in these matters. It is a firmly established principle that judicial review of findings of the Board is limited to inquiry as to whether on examination of the entire record these findings are supported by substantial evidence.[1] Suffice it to say that we have carefully read the record and must conclude that there is ample and substantial evidence to support each of the Board's findings.

■ Respondent contends that the drivers' activities were unprotected because they occurred during the pendency of a representation proceeding before the Board.[2] Bargaining with the drivers would have been an unfair labor practice, where the Board had already designated another bargaining unit. A strike to force an employer to commit an unfair labor practice is illegal and unprotected by the Act.[3] However, the trial examiner found the activities to be protected under the Act. This was not an attempt by a competing union to secure recognition as the exclusive bargaining unit where another union had

---

1. Rocket Freight Lines Co. v. N.L.R.B., 427 F.2d 202 (10th Cir. 1970), cert. denied, 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed. 2d 246; Pac. Intermountain Express Co. v. N.L.R.B., 412 F.2d 1 (10th Cir. 1969).

2. *See* 175 NLRB 619 (1969). The Board's order was enforced by this Court on December 22, 1970 in N.L.R.B. v. Tonkawa Refining Co., 434 F.2d 1041 (10th Cir. 1970).

3. *See* Nat'l Packing Co. v. N.L.R.B., 377 F.2d 800 (10th Cir. 1967).

been designated the exclusive bargaining unit. A recent decision from the United States Court of Appeals, Ninth Circuit, is analogous to the instant case. In N. L.R.B. v. Intalco Aluminum Corp., 446 F.2d 1232 (9th Cir. 1971), a group of employees struck while a representation proceeding was pending before the Board. The Ninth Circuit held that the strike was not one for recognition, but to protest longstanding employee grievances. The strike was protected under the Act. We find Intalco controlling here. Thus the drivers' actions were not in furtherance of an illegal end under the Act; their strike was protected under the "concerted activities" provision of § 7. As substantial evidence supports this finding, it must now be upheld.

■■ Respondent argues that certain procedural errors allegedly committed by the trial examiner preclude enforcement of the Board's order. The specific procedural errors alleged are exclusion by the trial examiner of respondent's main witness to testify, and the refusal of the trial examiner and the Board to receive and consider respondent's evidence as found in the rejected evidence file. Congress saw fit to entrust a wide amount of discretion to the Board in the conduct of its own affairs.[4] Refusal of a trial examiner to call a witness is not improper where it appears that the testimony which would have been elicited would be in no way relevant, or would be cumulative in nature.[5] There is no showing here that the excluded testimony would have been anything but cumulative in nature. Thus we are unable to find an abuse of discretion in failure to call the witness. The trial examiner may also, in his discretion, exclude evidence which he deems cumulative or not pertinent.[6] Again, we are unable to find an abuse of discretion in placing the proffered material in the rejected evidence file. Thus no procedural errors were committed by the trial examiner such as will now prevent enforcement of the Board's order.

■■ Respondent argues that a bias and lack of impartiality on the part of the trial examiner denied a fair hearing to Tonkawa. It is well established in this Circuit that the fact that the trial examiner largely believed general counsel's witnesses and disbelieved employer's witnesses does not per se indicate bias.[7] Further, we find in the record no formal objection to the alleged partiality and bias. The contention that the trial examiner's conduct precluded a fair hearing is rejected; there is no substantial showing on the record to support the charge.

■■ Respondent contends that the Board has abused its discretion by the breadth and ambiguity of its proposed order. This Court may review the Board's order to determine its scope and necessity. However, the appropriateness of the remedy is entirely within the Board's discretion. Love Box Co. v. N. L.R.B., 412 F.2d 946 (10th Cir. 1969). We find no abuse of discretion here.

The order is enforced.

4. See 29 U.S.C. § 160(b).

5. Mak-All Mfg., Inc. v. N.L.R.B., 331 F.2d 404 (2d Cir. 1964).

6. N.L.R.B. v. Dewey Portland Cement Co., 336 F.2d 117 (10th Cir. 1964).

7. N.L.R.B. v. United Nuclear Corp., 381 F.2d 972 (10th Cir. 1967).